### John P. Cook and Another v. The Village of Hillsdale and Others.

Where the owners of mill premises joined others in laying out village plats, by which they recognized a street as coming up to the line of the mill lot on each side,—*Held*, That they did not thereby give a public way across their mill premises, it not appearing from the plats that such was their intention.

Where a public way was claimed as dedicated by certain plats, and also by acts *in pais*, and it appeared that the owners of the premises had always occupied the *locus* as private property, and excluded the public therefrom,—*Held*, That the right to the way must depend upon the plats alone, and could not be claimed unless the plats showed an intention to give it.

*Heard July* 14*th.* *Decided July* 15*th.*

Appeal from Hillsdale Circuit in Chancery.

The bill was filed by John P. Cook and Henry Waldron, to restrain the corporate authorities of Hillsdale village from opening a street across their mill lot in said village, and from building a bridge over their mill race on said lot. The lot embraced a single acre, lying partly on each side the line dividing the north and south halves of section twenty-six in said village. It appeared from the evidence that in 1838, complainant Cook and one Ferris, having an undivided interest in the land lying on each side this half section line, erected a mill on this lot, and having procured conveyances from the other persons owning jointly with them, continued to occupy the same until 1851, when Ferris sold to Waldron, and Cook and Waldron

have ever since continued to occupy and operate the mill.

The village authorities claimed a street of two rods in width on each side this half section line, being a continuation of Bacon street. To show their right to such street, they introduced in evidence the record of the plat*

\* The following is a copy of the material portion of this plat.

of the village of Hillsdale, made July 11th, 1839, by Joel McCollum, Charles Gregory, Rockwell Manning, Chauncey W. Ferris, and John P. Cook, then owners of the land on the north of said half section line.

To this plat were attached explanations by the proprietors, of which the following portions only have a bearing upon the question, from their reference to Bacon street.

"A public highway is laid out on the south of said plat, four rods in width. * * * Court House square is twenty-four rods in length on Howell street, about six rods in width on the north, and about seventeen rods in width on Bacon street, embracing all the lands between Howell, Broad and Bacon streets, as represented on the plat." The explanations also gave a particular description of each lot numbered upon the plat, except lot twelve.

Defendants also gave in evidence a partition deed between the parties to this plat, embracing, among other lands, the lots numbered on this plat, and referring to the plat as "laid out by the said parties on the south part of the east half of the north-east quarter of section twenty-seven, extending on the south-west part of the west half of the north-west quarter of section twenty-six," and which partition deed purported to be given for the purpose of making partition of the said lands, of which the parties thereto were tenants in common.

Defendants also gave in evidence the record of a plat of the South Addition to Hillsdale village, embracing the lands lying south of this half section line, which plat was made June 19th, 1843, by McCollum, Manning, Ferris, Cook, George C. Gibbs, and Charles Gregory, then owners of said lands.

To this plat were also attached explanations which stated Bacon street to be on the half section line, and two rods in width on each side of said line. They also located the center point of Howell and Bacon streets, described lot ninety-eight as in the corner of Broad and Bacon streets, and extending ten rods on the line of Broad street,

and bounded lots west of Broad street, and also blocks and lots east of it, on Bacon street.*

Defendants also gave in evidence several deeds given by Cook, Ferris and Waldron, referring to and recognizing these plats.

Chauncey W. Ferris testified, that Bacon street is used by the public to Broad street, and then you can go down Cook street to Short street, on the north side of the mill, and then south-east across the tail race to a road now used but not down on the Hillsdale village plat. The public never traveled across the mill race on the mill acre. The

* A copy of the material portion of this plat is here given.

mill was built in 1838, and commenced running in the winter following. The vacant ground on the mill acre was occupied by the occupants of the mill for piling wood and lumber — sometimes more and sometimes less. Sometimes the whole was occupied, and sometimes not. The acre was not enclosed from the street.

Joel McCollum testified, that Bacon street is located on the quarter section line. The east line of the eighty on which the mill stands extends eighty rods east of Court House square, beyond the mill and beyond the river. Bacon street is not enclosed on the north side east of Broad street. Glasgow and Westfall have fences nearly on the south line. The south-west corner of the mill lot extends three or four rods west of the race.

Complainants admitted that Bacon street had been worked from the east line of Broad street west, and from Short street east.

Defendants also gave in evidence a deed from Ferris and Cook, to Samuel M. Glascow, dated June 26, 1854, conveying premises described, as follows: "Commencing at the north-westerly corner of village lot number ninety-eight in the South Addition to the village of Hillsdale, thence east along the south side of Bacon street twelve rods, thence south at right angles with said street to the south line of said lot, thence along the south line of said lot to the south-westerly corner of said lot, thence in a north-westerly direction along the east side of Broad street to the place of beginning, be the same more or less."

Also a deed from Cook and Waldron, to Charles W. Westfall, dated April 4, 1855, conveying premises described as follows: village lot numbered ninety-eight South Addition to Hillsdale village Plat, except a piece off the west end of said lot, running twelve rods on Bacon street and lying west of a line drawn at right angles from Bacon street, being the parcel formerly owned by John M. Brown.

Charles W. Westfall testified, that the land mentioned

in the deed from Cook & Waldron to him, was enclosed when he bought it. The north fence was about where it now stands, and was on a line with the fence east and west of it. The east enclosure of what witness purchased went to the race. Witness took possession of the land as enclosed, with the consent of Cook & Waldron. From Bacon street to the west line of the race has been used by the occupants of the mill for piling wood. The street has not been enclosed. A fence has been extended north from the lot of witness to the flume along the race — a temporary fence. This fence was made every summer to prevent cattle and horses watering there and roiling the water. It was taken down in the fall. Don't remember whether it was put up last summer or not. Bacon street, west of the race, is not worked east of Broad street. It has been so filled with wood that it has been almost impossible to get down to the race.

I. H. McCollum testified, that Bacon street west of the south - east corner of Court House square has been used as a street to his knowledge thirteen years. That part lying east of the mill has also been used as a street for the same length of time. The land on the mill acre east of the race, claimed as part of Bacon street, has been used by the occupants of the mill for piling wood. Witness don't know as from Broad street to the race it has ever been used as a highway. It has never been enclosed by fences to his knowledge.

John Manross testified that the fence on the north side of Glasgow's and Westfall's land is about on a line with the south side of Bacon street. It crowds the street about nine inches. The whole flume of the mill is out of Bacon street. The mill acre runs south of the south line of the street two rods and five links. The south - east corner would be about in the centre of the street extended. The south-west corner is about a rod west of the race. The mill stands north of the street extended.

COOK *v.* VILLAGE OF HILLSDALE.

S. M. Glasgow testified that he owned and occupied the west part of lot 98, South Addition to Hillsdale. John M. Brown occupied it under a contract from Cook & Ferris, and witness purchased his contract. Witness has been acquainted with the land thirteen or fourteen years. Waldron, at the time this matter of the street was first agitated, made a proposition that if the owners of the property on the line of Bacon street, from Broad street east, would sign off, they would go into court and get the street taken up, and get a deed from the original proprietors. He said he would get a deed for witness of four rods wide of it along his lot from the original proprietors. He said nothing about a street on the mill lot, one way or the other.

C. W. Ferris, being recalled, further testified that he was in joint occupation of the mill lot with Cook from 1838 to 1851, when he sold to Waldron. The lot was occupied with wood and staves. They occupied a corner in the south-west part, within the street as claimed, as a hog yard, several years after 1840. Witness thinks since he sold to Waldron there has been a fence on the west side of the race a part of the time, to keep people from driving down to the race to water their teams. Watering teams there roiled the water so it could not be used in the boilers. During the time witness was joint owner and occupant he has no recollection of ever hearing of any claim to a street across the race. The claim to a street across the race is a recent thing. The public did not use it as a street during the time witness occupied it. The owners used it for their purposes as far as they chose to, though they never fenced it.

James C. Saxton testified that there was a fence across from the flume to the south fence two seasons when he worked in the mill. The public did not use the land. Cook & Waldron used it with wood and staves. The fence was not kept up in the winter. A portion of the mill acre west of the race was enclosed as a hog yard the first year witness worked there. He worked there three falls.

Thomas Weir testified that he had been in the employ of complainants six or seven years. The public never used a foot of the mill acre. The land has all been used by the mill owners for mill purposes.

The cause being submitted on this evidence the court below awarded a perpetual injunction in accordance with the prayer of the bill, and defendants appealed.

*C. A. Stacy* and *G. A. Knickerbocker* for defendants:

The facts in this case show a good dedication *in pais* by the complainants and their grantors.

The evidence of a full and complete dedication by the proprietors is furnished us by the plats, the sales under them, and the working of the street without objection.

The proprietors never intended to dedicate a street called Bacon street at each end, and close up a space in the middle from the public. The persons purchasing did not suppose this portion of the street was to be closed up.

The acceptance of the dedication was an acceptance as extensive as the dedication. The question is not, have the public used every part of the street, but have they accepted it as a whole.—6 *Pet.* 498 *to* 505. In this case the court says: "It was not essential for the city to show that *an entire slip* of land referred to had been used as a street, but it was essential to establish that it had been dedicated as such." And again; "Whilst the circuit court might have called the attention of the jury to the fact that the ground in controversy never having been used as a street, was a circumstance which they ought to weigh against the dedication contended for, it was error for them to say, in substance, *there could be no right without the use.*"

There was an unconditional acceptance by the public of Bacon street, as well as the other streets; there was no condition in the dedication, that it was dedicated provided the public accept at a certain time or in a certain way; the working of the most of the street, leaving the part most difficult

to work until the last, is the usual mode of improving all streets and highways in a new town. The same reasoning would declare that a delay of a single day would vacate the part of the street unworked.

But in this case the trustees who had charge of the streets have expressly accepted the dedication of the unworked part, by the order to build the bridge and work the street across the mill lot.

This proceeding is based upon the assumption that no easement nor right to the easement exists. The complainants wait until the public have formally accepted the dedication, have improved and used the most of the street, and when about to use the balance, ask that the public be restrained from the improvement and use.

They ask to be relieved from their own act; to have the public deprived of a right they had at least agreed to give them.

They ask at the hands of the court of chancery a violation of the ancient maxim, "That he who seeks equity must do equity."

*T. M. Cooley* for complainants:

1. To give a town plat the effect to vest rights in the public, an intention so to do must clearly and distinctly appear on the plat itself. This intention must not be left to mere inference. The statute has required the utmost particularity in such cases, requiring actual boundaries, courses, extent, and object to be stated.— *Comp. L.* § 1133.

Neither of these plats describe this street by boundaries, courses, and extent, and they, therefore, fail to constitute it, *ipso facto*, under the statute, a street. Any inference that may be drawn from them, in favor of an intention to give a street here, is an inference that can only be taken into account in considering the question of dedication.

2. But were here an actual dedication of the land to the public, in a manner that made it *instanter* a public way,

we submit that under the law then in force, it long since ceased to be a public way, for any purpose whatever—it not having been opened across these premises within four years— *R. S.* 1838, *p.* 127 § 41.

The street here would have been a mere town way; the village was not incorporated, and the road could only be opened for use as a town road, and by the township authorities. We submit that this provision applies to all town ways, however constituted.

The question is not now whether private individuals may not have acquired rights of private way over the premises —this may and often does occur from the selling of lots with reference to a plan, without the public thereby acquiring any rights whatever. The issue here is one of *public* way, and defendants can claim nothing from any private rights, if any should happen to appear in the case.—20 *Wend.* 96; 16 *Barb.* 251.

Again, if the statute did not make the neglect of the public, to open and use this way, terminate the public right, the long acquiesence of the public in the private occupancy, is evidence of abandonment of so satisfactory a nature as ought to be held conclusive.—7 *Conn.* 125.

3. But has there ever been any actual dedication? A few elementary principles, it seems to us, will dispose of the whole question. A dedication of a way, is a voluntary giving of the land for the purposes of the way.—19 *Barb.* 179.

The intention to dedicate must distinctly and unequivocally appear.—23 *N. H.* 337; 14 *Barb.* 511; 2 *Dong. Mich.* 256. The dedication is not complete until accepted by the public.—6 *Mich.* 176; 8 *Grat.* 632; 2 *Doug. Mich.* 256; 2 *Seld.* 257. Until then it is a mere *offer* to the public; and may be revoked at any time before the public have accepted the offer. There is no sound principle upon which it can be held, that an offer once made and not then accepted, is open forever. In determining the question of dedication, all the acts of the proprietors having reference thereto, are to

be considered together, and an inference of intent to dedicate may be rebutted by acts evidencing a contrary intent. —8 *Ad. & E.* 99; 5 *C. & P.* 460.

Applying these principles to the facts of this case it will appear that so far from a dedication being proved, we have clearly and distinctly proved that none was ever made.

CAMPBELL J.:

The mill lot in question was the individual property of a part of the owners of the Village Plat, and not the common property of the whole company. The evidence shows very clearly that it has always been occupied entire, and that if Bacon street legally crosses it, the street must owe its existence to the original plats alone.

The plat of the south part of the village represents this lot as distinct from the land platted, and shows it, in its whole extent, running far beyond the north line of Bacon street, and yet enclosed by unbroken lines. On that side of the plat Bacon street is not protracted on the map, while it is distinctly laid down on the other side. The south plat is entirely inconsistent with any extension of a street through this property.

The north plat lays down no street lines across the mill premises. If the street were intended to cross them, they would be divided by it into two separate lots, and in accordance with the rule followed in the rest of the plat, these lots would have been marked by their external lines. There is not, on any other portion of the plat, a single open space where the line of a street is intended to run through platted property. Even the public square is separated from the streets by as distinct marks as those separating the smaller lots. The law contemplates that all lots shall be numbered or otherwise designated. It will be seen, by reference to the plan, that this system of numbering is continued up to the western line of the mill lot, so carefully as to include a very small gore, numbered twelve, abutting upon it, on the south side of

Cook street, while the large lot, immediately east of the mill lot, is not marked or numbered.

By the annexed explanations the plan is merely intended to cover the south-west part of the government subdivision, and it is obvious that the mill lot, offering an obstruction to the plan, was adopted as the external boundary of the subdivisions to the eastward on the lower side. Without refering to any of the legal questions raised, and looking at the plats alone, we think the decree below, enjoining the defendants from opening the street, was proper, and should be affirmed.

The other Justices concurred.