## John L. Woods v. Andrew Monroe et al.

*Injunction: Equity Practice: Ejectment: Multiplicity.* Where a party was in full possession of certain real estate, the record title to which was incomplete, and ejectment was brought by several parties as to a portion thereof: *Held,* that as he had a clear right to file a bill to quiet his title to the remaining lots, the question being the same as to all, it was proper to enjoin the ejectment suit, and thus avoid multiplicity of suits, and the questions in controversy be determined in one proceeding.

*Bill to quiet title: Administrator's sale: Probate Court.* In a proceeding to quiet title to certain real estate, the title to which was derived through an administrator's sale, the heirs of the intestate sought to show the invalidity of the appointment of the *de facto* administrator, who made the sale: *held,* that the Probate Court, having the jurisdiction to grant said administration, and having recognized its validity, and licensed such administrator to sell the estate, and confirmed his sale, this court would not inquire into the regularity of the appointment in this collateral proceeding.

*License to sell real estate: Supplemental order: Publication of notice.* Where a portion of certain lots was omitted in the license to sell, but said omission was corrected by a supplemental order of the Probate Court, and appended to the license: *Held,* That this was a sufficient license to sell all the lands — *2 Mich. 226. Held further,* That complainant's title would not be affected by a failure to publish the notice for hearing of the petition the full statutory time. *Comp. L. § 3090.*

*Proof of posting of notice to sell real estate: Report of Administrator.* Where there was no affidavit of the posting of printed notices of the sale of real estate under a Probate order, but it appeared from the sworn report of the administrator, duly confirmed, that such notices were posted, and also by other proof that said notices were duly published in a newspaper: *Held,* That this was sufficient evidence.

*Probate Court: Sale of equitable interest.* Where an intestate has the complete equitable title in fee to real estate, the proceedings in the Probate Court to sell them should be the same as in other cases.

*Bill to quiet title: Costs.* Where in a bill to quiet title by making proof of certain defects in a Probate record, the defendants asserted in good faith a title apparently valid as to them, costs were awarded to defendants in the court below, notwithstanding decree was made against them on the merits; but on their appealing from that decree, no costs in the appellate court were given to either party.

*Chancery practice: Testimony.* Testimony may always be taken by consent in chancery, as well before as after an issue in fact is joined.

*Administrator's sale: Affidavit of posting notices.* Affidavits of the posting of notices of an administrator's sale, made and filed in the Probate Court ten years afterwards, are not legal evidence of that fact.

*Deed: Administrator's sale: Probate Judge: Bona fide purchaser: Notice.* The fact that a lot of land, sold at an administrator's sale, was deeded, by the purchaser, to the Judge of Probate, is not such notice of fraud or wrong as would preclude any other person becoming a purchaser in good faith, even though the deed was by mistake made to bear date before the confirmation of the sale.

*Heard July 10th.      Decided July 12th.*

Appeal in Chancery from Sanilac Circuit.

The bill in this case was filed to quiet the title of the complainant to, certain real estate in Sanilac county, the title to which was derived through an administrator's sale.

The case was heard on pleadings and proofs, and a decree granted in favor of complainant.

*Wm. T. Mitchell*, for complainant.

*A. B. Maynard*, for defendant.

COOLEY CH. J.

The bill in this case is filed to quiet the title of the complainant to certain lands in Sanilac County, to which he derives title through sales made by the administrator of Samuel W. Monroe, of whom the defendants are heirs at law. The defendants contest the right of complainant to the decree he prays for, on grounds which it will be convenient to consider separately.

I. It is claimed that the case is not a proper one for relief in equity, inasmuch as the complainant claims by his bill a complete legal title, which could be fully examined and settled at law, and a part of the defendants had already commenced suits in ejectment for the recovery of their undivided interests in one of the lots in controversy, which suits were stayed by injunction in this proceeding.

We do not think there is any force to this objection. The complainant was in full possession of the lands, and was not, therefore, in position to bring his right to trial by a suit in ejectment. The defendants were severally bringing actions against him in respect to one of the lots, and as he had an unquestionable right to file a bill to quiet his title to the others, and the questions were the same as to all, it was proper that to avoid a multiplicity of suits, the ejectment suits should be enjoined, and the questions in controversy be all determined in one proceeding. Besides,

the record title was in the defendants, which, of itself, would justify the bill.

II. The first objection taken to the proceedings resulting in a sale by the administrator, relates to the validity of his appointment to that office. It appears that Hiram Bacon and Benjamin F. Luce were first appointed administrators on the Monroe estate, and that both qualified, but beyond joining in the inventory, Luce never acted, and soon left the state, which, under the statute, would have been cause for his removal. Bacon was in fact treated as sole administrator, and, as such, was settled with and discharged by the Judge of Probate. No order of discharge was ever made as to Luce, but John L. Bell was appointed administrator *de bonis non,* and acted and made sale of the lands as such.

Whether any question of the validity or regularity of Bell's appointment could have been gone into under any other circumstances than those disclosed by this record, we do not feel called upon to say, as we are clear that the question can not be raised as against this complainant. The statute — *Comp. L.* § *3090* — is as follows: "In case of an action relating to any estate sold by an executor, administrator or guardian, in which an heir, or other person, claiming under the deceased, or in which the ward, or any person claiming under him, shall contest the validity of the sale, it shall not be avoided on account of any irregularity in the proceedings, provided it shall appear:

"1. That the executor, administrator or guardian was licensed to make the sale by the Probate Court having jurisdiction;

2. That he gave a bond, which was approved by the Judge of Probate, in case a bond was required upon granting a license;

3. That he took the oath prescribed in this chapter;

4. That he gave notice of the time and place of sale as in this chapter prescribed; and,

5. That the premises were sold accordingly, and the sale confirmed by the court, and that they are held by one who purchased them in good faith."

.If it shall appear in our subsequent examination of this case that the facts made necessary to the support of a sale by this section actually exist, we do not think the regularity of Bell's appointment can be inquired into. He was administrator *de facto*, and his license to make the sale, whether valid or invalid, was by the Probate Court of Sanilac County, which alone had jurisdiction to grant it; Monroe having been a resident of that county at the time of his death.

III. The license is claimed to be void, because the petition therefor did not describe any lands. This objection is disposed of by the case of *Howard v. Moore, 2 Mich. 226*. The lands were fully and properly described in the license, except one lot; and as to that, a supplemental order was afterwards made and appended to the original license, which authorized and directed the administrator to sell it. There was, therefore, a license by the court having jurisdiction for the sale of all the lands; and if, as is claimed, the order for hearing on the petition for license was not published the full four weeks required by the statute, the complainant's title will not be affected thereby.

IV. The license to sell required Bell to give bond for the faithful discharge of his duties on the sale. No bond is found in the files, but both Bell and the Judge of Probate testify that they have no doubt one was given, and there is independent evidence that one was drafted. This evidence was met by that of a person who, as the Judge of Probate testified, was one of the sureties, and who denied having signed any such bond. The preponderance of evidence, however, is the other way, though it is quite possible that the Judge of Probate may have been mistaken as to the surety.

It is proper to say in this connection that the evidence of Mills, the Judge of Probate, is assailed by the defendants as utterly unworthy of credit, and also as not properly taken in the cause.    That he was dishonest in the proceedings is strongly to be inferred from this record, and we should hesitate about basing judicial action upon his uncorroborated statements.    The formal objection to it is based upon its having been taken in the case before the suit was at an issue of fact as to a part of the defendants; but the defendants all appeared by solicitor without objection, when it was taken, and as, under our practice, the complainant is always put to the proof of his bill, except where its allegations are expressly admitted, there is nothing in the way of taking testimony by consent, as soon as the bill is filed. And if the evidence of Mills should be disregarded in this case, that of Bell would still stand unimpeached, and would be supported by some collateral circumstances and inferences.

V.  It is insisted that there is no legal proof of the posting of notices of the sale by Bell, as was required by the statute.    That notices were duly published in a newspaper, as the statute prescribed, was fully shown, and Bell, in his report of sale, stated under oath that he posted notices also.    He subsequently, but not till ten years afterwards, made and filed in the Probate Court an affidavit of the posting in due form; but this does not appear to have been done by consent of the court, and under the decision in *Mundy v. Monroe, 1 Mich. 68,* can not be considered legal evidence.    But the report of sale, which was made at the time, and which was duly confirmed, is evidence, and sufficient, we think, on this point.

VI.  As to two of the lots, the sale is claimed to be void, on the ground that they were bid off by one John Divine for Mills, the Judge of Probate, and actually deeded over to Mills before the sale was confirmed.    The proof, however, does not support this allegation.    Divine testifies

that he bought the lots for himself, and that he deeded them over to Mills at the request of the latter, who claimed to want the title for one Buell. That Mills accounted to the administrator for the purchase price is conceded, but Divine says the sale was confirmed before he was spoken to on the subject by Mills. The suspicious circumstance at this point is that the deed is dated before the confirmation; but Divine swears that it was neither executed nor acknowledged until afterwards; and though no one pretends to explain this date, it does not seem sufficient to overcome the testimony of Divine, who could not well be mistaken in what he swears to, and whose candor is not impeached. Mills, it appears, afterwards conveyed to Buell, and we do not think the record gives any such notice of actual or probable fraud in the sale as should preclude the complainant becoming purchaser in good faith, and having the benefit of the statute.

VII. Some objection is taken to the sale on the ground that the estate of Samuel Monroe had only an equitable title to the lands; the legal title being then held in trust for him by his brother in Canada. If this trust was declared by writing — as to which we have no evidence — it is very likely it was one which was executed by our Statute of Uses; but whether that was so or not is immaterial on this inquiry. Samuel Monroe had the complete equitable title in fee to the lands, and the proceedings to sell them should have been the same as in other cases.

This review of the case brings us to the conclusion that all the statutory requisites to a valid sale exist in the case, and that complainant should have the relief prayed. At the same time we have no doubt the sale was unnecessary, and brought about by dishonest procurement. But the complainant was in no way connected with this dishonesty, nor was it brought home to his knowledge before his purchase, so far as the testimony shows. He and the heirs are alike innocent parties, one or the other of whom must

suffer by the fraud which has been perpetrated, and under the circumstances the statute casts the loss upon the heirs.

This disposes of the case, except as to the question of costs. These, we think, the court below ought not to have awarded against the defendants. They were asserting in good faith a title apparently valid, and the complainant was compelled to come into a court of equity to perfect his title by making proof of those proceedings which did not appear by the probate records, and thereby curing defects with notice of which he was fairly chargeable. We think the expense of correcting his record - title under such circumstances should have been borne by himself.

There was nothing unreasonable or unfair in the defense which was made, but the case on the other hand, was so doubtful as to fully justify defendants in putting complainant to his proofs.

The decree for costs in the court below will be reversed, and the defendants will recover costs. In other respects it will be affirmed. No costs will be awarded on this appeal.

CAMPBELL J. concurred.

CHRISTIANCY J.

I concur in the opinion of my brother Cooley, except upon one point, upon which, I think, the result of the case should be the reverse of that at which he has arrived.

It was incumbent upon the complainant to prove the giving of such a bond, under the license to sell, as the statute required; a bond upon which the heirs in case of a breach might have sustained an action.

I am not satisfied from the evidence that such a bond was ever given.

The evidence that any bond was given was this: Bell, the administrator, does not profess to have any recollection of the bond or of its execution. It is true he declares he

has no doubt the bond was given; but this, as I under-' stand his testimony, was only his inference, based upon his belief that he would not otherwise have proceeded to sell. Such testimony may be barely admissible, but to my mind is far from satisfactory. Mills, who was the Judge of Probate at the time, and the author of the whole scheme for defrauding these heirs, does, it is true, testify that a bond was given, and that Hutchins was one of the sureties. But the conduct of Mills in the whole transaction was such, and shows him to have been so utterly void of any regard to truth, or any sense of moral obligation, that I am not prepared to believe anything, because he has testified to it, which I would not equally have believed without it. Hutchins, who he says executed the bond as one of the sureties, (and he names no other), positively denies having executed the bond. We have then only the testimony of another witness who says a bond was drawn up, but whether it was executed he has no knowledge.

This is all the evidence of the giving of any bond under the license.

But we should not only be satisfied that a bond was executed, but that it was such as the statute required. This is a point for us, and not for the witnesses, to determine. We can only determine this from its contents. But where is the evidence of the contents of this bond from which we can determine this question? I have been unable to find any such evidence of the contents as would enable us to say it was a bond upon which the heirs, in case of its breach, could have maintained an action upon it. This I think is the true test of the sufficiency of the proof which it was incumbent upon the complainant to make. And it can hardly, I think, be claimed that the proof before us is such as, in an action by the heirs upon the bond, would at any time have entitled them to recover on proof of a breach. I can not, therefore, concur in affirming the decree.

GRAVES J.

I am not satisfied that the testimony is sufficient in this case to prove that Bell, on obtaining the license to sell, gave the bond required by the statute, and I am therefore in favor of reversing the decree granted by the court below.

Upon the question of costs I agree with the Chief Justice and my brethren.

While I feel the force of the reasoning of my brother Christiancy upon the question discussed by him as to the necessity of proof of such a bond as would support an action by the heirs in case of breach, I prefer to withhold an opinion upon that subject until the nature of the case presented shall compel its discussion.