HAWKINS *v.* DILLMAN.

1. QUIETING TITLE—EQUITY—JURISDICTION.

> Although chancery court has statutory jurisdiction to try title to land, bill to quiet title will not lie so as to deprive defendant of jury trial where question of title may be tried at law unless there be an independent ground of equity jurisdiction in which case title may be tried even though ejectment is also open (3 Comp. Laws 1929, § 13444, subd. 4).

2. SAME—EQUITY—JURISDICTION.

> Equity has jurisdiction to quiet title where there is fraud, to avoid multiplicity of suits, to set aside a mortgage or to reform an instrument.

3. EJECTMENT—EASEMENTS—POSSESSION.

> Although an easement is an intangible and incorporeal right, when its exercise requires complete possession of the land itself to the exclusion of the holder of the fee, such as use for a public street, ejectment is the proper remedy.

4. EQUITY — JURISDICTION — QUIETING TITLE — CONDEMNATION PROCEEDINGS.

> Jurisdiction of bill to quiet title to strip of land used as part of wide public street is retained in equity in order to grant injunction conditioned on institution of condemnation proceedings, where real relief sought is payment for the land and ejectment is not an adequate remedy.

5. HIGHWAYS AND STREETS—TAX ROLL—EVIDENCE.

> Inclusion or omission of property from the tax roll is not of very great probative value in determining whether land belongs to highway or is private property.

6. ADVERSE POSSESSION—HIGHWAYS AND STREETS.

> Title by adverse possession of strip of land adjacent to highway cannot be sustained where possession was not continued for sufficient time to establish such title prior to enactment of statute forbidding acquisition of rights in public highways by adverse possession (Act No. 46, Pub. Acts 1907).

7. RAILROADS—CESSATION OF USER—REVERTER.
  Record *held*, to show that legal title to vacant strip of land
  between highway and steam railroad right of way, granted to
  electric railway for its purposes, reverted to grantors upon
  cessation of use for electric railway purposes.

8. DEDICATION—INTENT—ACCEPTANCE.
  The matter of dedication of land for public highway is largely
  one of intention and since no presumption of intent to dedicate
  land arises, it is necessary that an unequivocal showing be
  made of intent on the part of the owner to give it over to the
  use of the public and an acceptance on the part of the public.

9. SAME—DEEDS—ACCEPTANCE.
  Land between highway and railroad right of way *held*, not dedi-
  cated to highway purposes although deed to railroad company
  described land as bounded by highway, since description in
  such deed does not afford basis for presumption of dedication
  where railroad fences were not located on adjacent land and
  there was neither acceptance or user by the public.

10. SAME—USE OF LAND FOR RAILWAY PURPOSES—INTENT.
  Fact that strip of land was being used for electric railway pur-
  poses, where located between highway and railroad right of
  way is indicative that there was no intention to make dedica-
  tion thereof at time of platting lands on other side of railroad.

11. SAME—EXCLUSION FROM SUBDIVISION.
  On question of dedication, subdivision plats of property by some
  heirs and grantees of others of property which had been appor-
  tioned between them on one side of railroad right of way does
  not bind or estop heirs who are owners of legal title of strip
  of land on other side of railroad which had not been appor-
  tioned nor included in plat and did not revert to them until
  after the platting.

Appeal from Oakland; Doty (Frank L.), J. Sub-
mitted July 7, 1934. (Docket No. 118, Calendar
No. 37,908.) Decided September 18, 1934.

Bill by Elsie Mildred Hawkins and others against
Grover C. Dillman, State highway commissioner,
and City of Royal Oak, a municipal corporation, to

quiet title.  Decree for plaintiffs.  Defendants appeal.  Affirmed.

*Arthur E. Moore* and *George A. Dondero,* for plaintiffs.

*Patrick H. O'Brien,* Attorney General, *Arthur F. Lederle,* Special Assistant Attorney General, *Frank Kolodziejski* and *Nicholas V. Olds,* Assistants Attorney General, and *W. C. Hudson,* City Attorney, for defendants.

EDWARD M. SHARPE, J.  This suit involves the title to a strip of land 16½ feet wide and approximately 142 rods long, lying in what is now the central portion of wider Woodward avenue in section 8, town 1 north, range 11 east, of Royal Oak township. Prior to 1838, John Benjamin and wife owned all of the southwest one-quarter of section 8 in the township of Royal Oak.  On May 7, 1838, John Benjamin and wife conveyed to the president and directors of the Detroit & Pontiac Railroad Company, a steam railroad, a strip of land in section 8 described as:

"Lying on the east side of the Detroit and Pontiac turnpike and bounded thereby, being 24 feet wide and running parallel with said turnpike through the said described land."

The railroad company immediately built a fence along the west side of its right of way, which fence remained in the same place until the recent widening of Woodward avenue.

Since early times there has been a road from Detroit to Saginaw in the approximate location of the present Woodward avenue.  In 1827 an act of

congress (4 U. S. Stat. at L. p. 231) authorized the laying out of a road between Detroit and Saginaw but there is nothing to show that a survey was actually made. In 1857 the Michigan legislature established the Detroit and Saginaw road as a State highway to be of the uniform width of four rods (Act No. 107, Pub. Acts 1857). In 1895 a franchise was granted the Detroit & Pontiac Railway Company by the township of Royal Oak to construct a street car line along the Saginaw turnpike, now Woodward avenue. A single track was so constructed on the east part of the highway. In 1898 the heirs of John Benjamin granted a right of way to the Detroit & Pontiac Railway Company of

"that certain strip of land existing and lying between the eastern boundary of said Saginaw turnpike and the Detroit, Grand Haven & Milwaukee Railroad; the same being about one rod in width and about 142 rods long, more or less."

This grant was for railway purposes only and upon cesser of such use was to become void. Prior to the granting of this right of way the strip of land was never used for any purpose except in the spring of 1898 when the Benjamins planted potatoes thereon. Old photographs show it as grown up to grass. The traveled portion of the highway was close to the fence inclosing the Benjamin property on the west side of the highway, property which was later acquired by the Roseland Park Cemetery Association. A fence remained on this west line of the old highway until removed for the widening of Woodward avenue.

Some time prior to 1924 the Benjamin property east of Woodward avenue and the railroad tracks was partitioned between the heirs. In 1924 the

southern portion was platted as the Benjamin Estates Subdivision and in this plat the •streets and alleys were dedicated to the public. The plat shows Woodward avenue as being 200 feet wide at the point where the disputed property lies. In 1925 the northern portion was platted as Roywood Subdivision and also contains the same provisions as to streets and alleys and the width of Woodward avenue. However, the Roywood plat was made by grantees of part of the plaintiffs and the Benjamin Estates plat was joined in only by those of the plaintiffs to whom that part of the estate had been apportioned.

In 1931 and after the above property was platted, the Eastern Michigan Railways, successor to the Detroit United Railway and the Detroit & Pontiac Railway Company, ceased operating its electric lines, removed its wires and tracks and quitclaimed to the State highway commissioner. Later the State highway department paved the property formerly occupied by the Eastern Michigan Railways including the 16½-foot strip.

Plaintiffs, heirs of John Benjamin, bring this suit in equity asking that the title to the fee in this strip be quieted in them, free and clear of any public easement, on the ground that they are the rightful owners by recorded legal title and by adverse possession.

Defendants contend that the land in question is part of a public highway and that if plaintiffs ever had any title to the same it has been lost to them by reason of platting the adjoining property and dedicating the streets to the use of the public. Defendants also contend that a court of chancery has no jurisdiction of the subject matter.

The lower court held for plaintiffs and defendants appeal.

While the circuit courts in chancery of this State have express statutory jurisdiction (3 Comp. Laws 1929, § 13944, subd. [4]) to hear and determine title to land, such bills to quiet title will not be entertained and the defendant thus deprived of jury trial where the question of title may be tried at law. *Moran* v. *Palmer,* 13 Mich. 367; *Carpenter* v. *Dennison,* 208 Mich. 441; *Dunn* v. *Peck,* 255 Mich. 391; *Kamman* v. *City of Detroit,* 252 Mich. 498. Of course, where a court of chancery has jurisdiction of the subject matter on an independent ground, it may determine the question of title although an action of ejectment would likewise be open. *Moody* v. *Macomber,* 158 Mich. 209; *Carpenter* v. *Dennison, supra; Nisbett* v. *Milner,* 159 Mich. 337. So equity has jurisdiction to quiet title where there is fraud. *Moran* v. *Palmer, supra.* Or to avoid a multiplicity of suits. *Woods* v. *Monroe,* 17 Mich. 238; *Eaton* v. *Trowbridge,* 38 Mich. 454; *Maes* v. *Olmsted,* 247 Mich. 180. Or to set aside a mortgage. *Methodist Church of Newark* v. *Clark,* 41 Mich. 730. Or to reform an instrument. *Nisbett* v. *Milner, supra.*

Where the defendant is in actual possession of the land, ejectment is the proper remedy. *Seymour* v. *Rood,* 121 Mich. 173; *Longcor* v. *Turner,* 191 Mich. 240. The plaintiffs contend that an easement is an intangible and incorporeal right, for which ejectment will not lie. But when the exercise of the easement requires complete possession of the land itself to the exclusion of any acts of ownership by the holder of the fee, ejectment will lie. It would be hard to conceive of any more complete possession than that of the public in a crowded thoroughfare

like Woodward avenue. It has been held both in this State and others that ejectment is a proper remedy for lands used as a public street. *Tuller* v. *City of Detroit,* 97 Mich. 597; *Kamman* v. *City of Detroit, supra; Mahon* v. *San Rafael Turnpike Road Co.,* 49 Cal. 269; *Le Blond* v. *Town of Peshtigo,* 140 Wis. 604 (123 N. W. 157, 25 L. R. A. [N. S.] 511).

However, in the present case ejectment would not be an adequate remedy. The only remedy possible at law is damages for the trespass and a writ of possession. The real relief desired by plaintiffs is payment for their land. This was secured by the decree of the lower court which made the granting of an injunction against defendants conditional on their failure to take condemnation proceedings within 60 days. Such conditional and injunctive relief is possible only in chancery and the suit will be retained in order that it may be granted.

On the merits, counsel for defendants contend that the disputed strip of land is not private property because it was not assessed for taxes. This is true to the extent that it was not separately described and assessed, but the inclusion or omission of the property from the tax roll is not of very great probative value in determining whether the property belongs to the highway or is private property. *Murphey* v. *Township of Lee,* 239 Mich. 551.

Plaintiffs' claim of title by adverse possession cannot be sustained. Prior to the granting of right of way to the Detroit & Pontiac Railway Company, the only act of possession which could be considered adverse was the planting of the disputed strip to potatoes in the year 1898. This possession and that of the Detroit & Pontiac Railway did not continue for sufficient time to establish title by adverse

possession prior to the enactment of Act No. 46, Pub. Acts 1907, forbidding the acquisition of rights in public highways by adverse possession.

However, the record shows that the legal title is in the plaintiffs as heirs of John Benjamin. While there is no definite record of a survey of Woodward avenue as originally located, the westerly boundary of the old highway is well established by a line fence, the legislative authorization limited the highway to four rods in width, and photographs and testimony show that the actual highway occupied only the westerly 66 feet. This left a 16½-foot strip between the highway and the steam railroad right of way which was vacant and unused until the construction of the second electric railway track about 1898.

Whatever rights the Detroit & Pontiac Railway Company acquired under the grant of 1898 terminated and reverted to plaintiffs with the cessation of operation of the railway in 1931. *Hickox* v. *Railway Co.*, 78 Mich. 615; *Jones* v. *Van Bochove*, 103 Mich. 98.

Defendants contend, however, that there was a dedication of the land for a public highway either by John Benjamin about the time of the grant to the Detroit & Pontiac Railroad Company in 1838 or by the subdivision plats of 1924 and 1925. Dedication requires an intention of the owner of the property to give it over to the use of the public and an acceptance on the part of the public. *Alton* v. *Meeuwenberg*, 108 Mich. 629; *Smith* v. *State Highway Com'r*, 227 Mich. 280. The question of dedication is largely one of intention. *Cook* v. *Village of Hillsdale*, 7 Mich. 115; *Weihe* v. *Macatawa Resort Co.*, 198 Mich. 334. In *Vance* v. *Village of Pewamo*, 161 Mich. 528, 535, this court adopted the following statement of the law:

"The facts and circumstances relied upon to prove the existence of an intent on the part of the dedicator must be of a positive and unequivocal character. Since, by a dedication, valuable rights in lands pass from the owner, no presumption of an intent to dedicate arises, unless it is clearly and expressly shown by his acts and declarations, or by a line of conduct the only reasonable explanation of which is that a dedication was intended. 9 Am. & Eng. Enc. Law (2d Ed.), p. 38, and cases cited."

The description of the right of way in the deed of 1838 as bounded by the highway and the subsequent location of the railroad fences is no more open to the presumption of the dedication of the intervening strip as highway than to the inference that the right of way was not located where originally planned. Moreover, there was no acceptance or user by the public.

The subdivision plats did not constitute a dedication of the strip because the plats showed the west boundary of the properties as the eastern line of the railroad right of way. The fact that both the electric and steam railways were operating at the time of the platting is indicative also that there was no intention to include this property in the streets dedicated. Moreover, the Roywood plat was made by third persons who could not bind or estop the plaintiffs, and only two of those of the plaintiffs interested in the Benjamin Estates Subdivision had reached their majority at the time of the platting.

The decree of the lower court will be affirmed, with costs to plaintiffs.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Butzel, and Bushnell, JJ., concurred.