47   435
114   614

SETH A. L. WARNER AND GORDON H. DAVIS v. HENRY BEEBE.

*Oral renewal of chattel mortgage—Assumpsit by mortgagee—New trial after general verdict.*

Where an instrument transferring title by way of security has been recorded as a chattel mortgage but has not been renewed as such except by an oral understanding that later dealings between the parties shall be conducted on the same footing, there is no change of legal ownership in the property.

A mortgagee of chattels cannot base an action of *assumpsit* upon his interest as such mortgagee.

A new trial must be granted where a general verdict has been rendered upon a charge embracing an unsound theory, and where it is uncertain whether the error did or did not affect the result.

Error to Alpena.   Submitted Oct. 26.   Decided Jan. 18.

ASSUMPSIT.   Defendants bring error.   Reversed.

*Kelley & Clayberg* for plaintiff in error.

*Turnbull & McDonald* for defendants in error.

GRAVES, C. J.   This litigation originated in conflicting claims to a quantity of saw-logs. They were cut by one Richard Nayler and the contending parties trace their respective rights to certain arrangements to which, as is said, he assented. On March 7, 1879, he made a written agreement with Warner & Davis to sell them the logs for $4 per M. feet delivered in the boom limits of Thunder Bay River

Boom Co.—the logs to be scaled by Richard Campbell in the boom of the vendees—the latter to pay by their note of the same date for $200, due in three months—and their notes running two months, and to be given on the report of the scale by Campbell of each lot for any balance found due to Nayler on settlement with him. The note for $200 was immediately given and endorsed and Nayler delivered it to Beebe.

About a year and three months earlier, that is to say, on the 10th of December, 1877, Nayler had agreed in writing with Beebe that he would cut, haul and deliver to Beebe two million feet of Norway and white pine saw-logs during the logging season of 1877 and 1878, from certain lands specified, and that delivery should be made within the limits of Thunder Bay River Boom Co.; and Beebe on his part agreed to pay at the rate of $4 per M. feet—first, in advances of such supplies not exceeding $2000 as should be reasonably required in such logging operations during the winter of 1877 and 1878; and second, the balance on the 15th of August, 1878. This writing provided further that all logs as soon as cut and skidded should be Beebe's property, but "that Nayler should have the privilege of as high price for logs as he could get on the contract." Beebe placed this instrument on file as a chattel mortgage. He made advances under it and admits that it was given and taken by way of security. Shortly after the sale by Nayler to Warner & Davis, Beebe set up a claim that the logs in question, being 122,060 feet cut in the season of 1879, were his property. No written renewal of the writing of December, 1877, between him and Nayler, had been made, nor had there been any attempt to renew it upon the files. Beebe contended however that by verbal agreement between himself and Nayler it had been continued and made applicable to subsequent operations, and that the logs were thereby his own. This statement is the version given by Beebe. Nayler differs, but that is not important now. Beebe admits that he did not own the stumpage. Warner, Beebe and Nayler met at Maltz's bank to effect some kind of an adjustment. This was on the 19th of March, 1879.

The contract of March 7th between Nayler and Warner & Davis, and the note of $200 which the latter had given to Nayler on the execution of that contract, and which Nayler had handed to Beebe, were placed together in an envelope and put into the hands of Mr. Maltz, and he endorsed on the envelope the following memorandum: "When logs are turned over to Warner & Davis note is to be turned over to H. B. B.—Contract—Richard Nayler to Warner & Davis—Money all to go to Beebe according to contract." Maltz understood that this memorandum was known and assented to by the three parties and that it comprised the whole understanding and was to be his exclusive guide as depositary of the papers.

The note for $200 was subsequently paid to Beebe. Nayler then claimed that he was entitled to the residue, and forbade payment of it by Warner & Davis to Beebe. He contended that he never gave assent to the memorandum put upon the envelope by Maltz and was not bound by it. Beebe insisted that he was entitled to the residue of the consideration for the logs and notified Warner & Davis not to pay it to Nayler. At the same time Warner & Davis contended that they held a demand of $120 against Nayler, for an advance made to him prior to their agreement for the logs of March 7th, and another for $65.26 paid subsequently to that date which they were entitled to set off against the sale price of the logs. Beebe brought *assumpsit* and was allowed to recover. He maintained the theory that in virtue of the transactions prior to March 7th between himself and Nayler, he became owner of these logs, and that through the transaction at the bank, Warner & Davis became his vendees on the terms of paying him the same sum at the same times and without any abatement, as provided to be paid to Nayler in and by the contract of March 7th. Throughout his evidence he adhered to this view. He made no claim of being entitled to recover on the single ground of an ownership obtained prior to the meeting at the bank. His attitude in the action was that of vendor

and he insisted that the sale was accomplished by what took place there.

When the circuit judge came to submit the case to the jury, he presented it in two aspects.    In the first he instructed them to see whether the terms contained in the old contract of December, 1877, whereby the property in the logs, as fast as they should be cut and skidded, was to vest in Beebe, were continued in force as far as the shingle logs were concerned, and if they found that they were, that it would then be their duty to return a verdict in Beebe's favor.    By this branch of the charge the jury were *first*, permitted to decide that Beebe, by means of his transactions with Nayler, prior to March 7th, acquired a legal title to the logs in question, and *second*, to base on that conclusion and independently of the transaction at the bank, a finding of the alleged sale and delivery by Beebe to Warner & Davis, and as a consequence to return a verdict in favor of Beebe. This was something more than a bare misapprehension of the case identified by the plaintiff, and on which he chose to rely.    It was the supposition of a new one neither warranted by the facts nor intrinsically sound in point of law.

The evidence respecting transactions between Beebe and Nayler, prior to March 7th, was susceptible of only one meaning, namely, that the old contract of December, 1877, was simply a security in the nature of a mortgage and not a transfer of legal title.    Beebe understood at the time that it was mere security and he acted on that understanding.    His expressions on the stand, that the logs were his property, amount to nothing.    His own admissions show to what state of facts he applied those expressions, and it becomes certain that he blundered in his terms or in his opinion of his rights as mortgagee.    The security was never received and it never attached to the logs in question, and the utmost extent of the claim is that there was an oral understanding with Nayler that later operations should be conducted on the same footing.    Whatever such an arrangement might possibly amount to, it is very clear that it could not work a change of the legal ownership from Nayler to Beebe, and had Beebe

relied on the transactions which occurred prior to the meeting at the bank, and made his claim as mortgagee and not as owner, his case, even if admitted, would not have entitled him to recover in this form of action.   *Randall v. Higbee* 37 Mich. 40 ;  *Lamore v. Frisbie* 42 Mich. 191.

The second view in which the case was submitted, although involving a construction of the evidence entirely at variance with the construction which Beebe claimed for it, was still a view which had substance.   It allowed the jury, in case of their ascertaining that Beebe did not acquire the property in the logs in question by means of what took place before the meeting at the bank, to proceed and find whether by the transaction thereat Beebe did not become assignee " of the claim that Nayler had against Warner & Davis for these logs," and if they found that he did, then to return a verdict for him.   But it is not necessary and would be scarcely prudent to discuss this alternative on the present record.

The jury found a general verdict and we cannot know whether they acted on this part of the charge or on the other which has been shown to be unsound and misleading, or whether they may not have divided, with some sustaining one theory and the rest agreeing with the other.   There must consequently be a new trial, and it is not possible to know whether the case hereafter will, or will not, stand on the same basis of fact as at the trial under review.   *Osburn v. Lovell* 36 Mich. 246.

The judgment is reversed with costs and a new trial ordered.

The other Justices concurred.