PAINTER *v.* LEBANON LAND CO.

1. FRAUD—OPINION—REPRESENTATIONS AS TO FACT.

In making a sale of land in Cuba to plaintiffs, the agent of defendant corporation stated that the company which he represented had sold 2,000 acres in the vicinity of the property conveyed, and that the purchasers were going there within six months or a year and make their permanent homes there. In fact no land had been sold to other settlers. *Held,* that the representations were not of mere matters of opinion, and that they were false and material.

2. PARTIES—FRAUD—JOINDER OF PLAINTIFFS.

A purchaser who subsequently united in the purchase of the land with the plaintiff to whom false representations were made, was properly joined as plaintiff in the action; it appearing that the statements influenced, and were intended to influence, him.

3. DAMAGES—FRAUDULENT REPRESENTATIONS.

While it was erroneous to charge the jury as to the measure of damages, that if they found for plaintiffs, the damages would consist of their joint expenditures, their payments on the land and compensation for their labor upon it, after deducting the actual value of the property, the error was not prejudicial under evidence which would justify a much larger award on the basis of the general rule of damages. (Modified on rehearing—cf. headnote No. 6.)

4. SAME—GENERAL DAMAGES.

The measure of the plaintiffs' loss for fraud in the sale of land to them would be the difference between the value of the land as it was and land of the quality and condition represented.

5. AMENDMENT—TRIAL—DISCRETION.

An amendment of the declaration permitted at the trial without imposing terms, in relation to a matter which was trivial and could not have taken the defendant by surprise, was a proper exercise of the court's discretion.

ON REHEARING.

6. DAMAGES—ERRONEOUS INSTRUCTION—PREJUDICE.

Although plaintiffs' testimony on the question of damages was

uncontradicted, and would warrant the jury in finding as large or a larger verdict than they awarded, it is not sufficiently clear that they would have so found, and a new trial must be granted to determine the amount.

Error to Washtenaw; Kinne, J. Submitted June 17, 1910. (Docket No. 29.) Decided September 27, 1910. Reargued March 6, 1911. Former opinion modified March 13, 1911.

Case by Resom M. Painter and Samuel L. Wilgus against the Lebanon Land Company for fraud. A judgment for plaintiffs is reviewed by defendant on writ of error. Reversed.

*Robert E. Bunker* and *B. M. Thompson,* for appellant.

*M. J. Cavanaugh* and *Arthur Brown* (*E. R. Sunderland,* of counsel), for appellees.

BROOKE, J. The action is trespass on the case in which plaintiffs recovered a judgment against defendant for $993.28.

The defendant was the owner of a tract of wild land in the island of Cuba, upwards of 9,000 acres in extent. It appears to have been its purpose to subdivide this tract into farms of 40 or 50 acres each, and to sell them to prospective settlers. Through one of its agents, it sold one of these farms to plaintiffs, who went to Cuba in March, 1906. Wilgus remained there until October, 1907, and Painter, with the exception of five months spent in Florida, remained there until April, 1908. Suit was commenced in July, 1908; plaintiffs claiming that they were induced to make the contract in question through false and fraudulent representations made by defendant through its agent. Paragraph 3 of the declaration is as follows:

"That on the date aforesaid the said defendant, by its duly authorized officers and agents, offered to sell to said plaintiffs a certain part or portion of said large tract of

land for the sum of $1,275, and then and there by its officers and agents represented to the plaintiffs that about one-half of a large tract of land, consisting of some 4,000 or 5,000 acres, had been sold by said defendant company in tracts or parcels of 40 or 50 acres each, to persons who were going to settle upon each and every parcel thereof, clear said lands, and make their homes thereon; that such concerted and united effort so to be made by each of said persons, to clear and settle upon each of said parcels of land, would greatly enhance the value of each and every parcel of said large tract of land, including the parcel of land so offered for sale by said defendant company to said plaintiffs."

The alleged false and fraudulent representations were made by one Beaman, who represented himself to be the general manager of the defendant. His authority to negotiate for the sale of the property cannot be questioned.

The plaintiffs are brothers-in-law, and it was their purpose to go together to Cuba and act in concert. This fact was known to Beaman, as is indicated by letters, written by him, addressed to both plaintiffs in Cuba before the contract was entered into. The representations were made by Beaman to plaintiff Wilgus only, at Belfontaine, Ohio, in February or March, 1906. Wilgus testified in part as follows:

"*Q.* What did he say as to how much of this land had been sold?

"*A.* I said to him, 'How much of this land have you sold?' He says: 'Here are 4,000 acres, made in tracts of 40 or 50 acres each. We have sold 2,000 acres of that land.' I says to him: 'How have you sold it? * * * Have you sold it to actual settlers or to speculators who are going to buy it and not go there and wait until people transfer it and then sell it at a price above and let other people make the improvements down there?' He says, 'We have sold that to actual settlers who are going on that land within six months or a year and settle on it and make it their permanent home.' Beaman says at that time that the settlers would commence to go there October 1, 1906; * * * that there was going to be a large amount of people there. I would be the last of them.

"*Q.* There would be a settler upon each one of these parcels they had sold?

"*A.* He said they had sold these, and it was going to be settled upon within six months or a year, and they would make their permanent homes there.   *   *   *   He claimed that in all 2,000 acres were sold to actual settlers, in parcels of 40 or 50 acres."

This information was communicated by Wilgus to Painter, his brother-in-law, and on March 20, 1906, they together set out from Ohio, for Cuba. Arrived in Havana, they were met by J. Warren James, secretary of defendant, who accompanied them to the land, 417 miles east of Havana. Both plaintiffs testify that they told James of the representations as to sales made by Beaman, and that James told them that they might rely implicitly upon what Beaman had said, though he personally did not know what sales Beaman had made. Plaintiffs examined the lands for several weeks and found them as represented, fertile wild lands. They finally selected a certain lot, and after considerable correspondence with Beaman entered into a contract to purchase it. They sent for their families and remained in Cuba upwards of 18 months, during which time they cleared about 15 acres of the land. Wilgus testifies that, had the representations made by Beaman been true, the land purchased by him and Painter would have been worth $4,000; that alone in the wilderness, as he and Painter were, it was utterly impossible to exist, and the land was worthless. Becoming convinced that no actual settlers would go upon the land, plaintiffs abandoned their property, returned to Ohio, and brought suit against defendant for damages.

It was not claimed by the defendant, upon the trial, that, at the time Beaman is said to have made the representations relied upon, the defendant had sold a single acre of ground to any person who either had or had not the intention of settling thereon. It is urged by defendant that, even if Beaman made the representations as claimed by plaintiffs, said statements being concededly

false, yet they are not actionable, for the reason that the false statement as to the fact of sale was coupled with the promise or opinion of Beaman that those to whom he had sold would settle upon the lands so sold within a few months. Defendant cites many authorities (which was unnecessary) to the proposition that statements of mere opinion, "dealers' talk," or promises of what will be done in the future, are not actionable. The difficulty with defendant's position is that, if Beaman made the representations as claimed, they do not fall within this line of authorities. In effect, he said to Wilgus:

"I have sold 2,000 acres of this land, in parcels of 40 or 50 acres each, to individuals who assured me of their intention to settle thereon with six months or a year."

This was a statement of fact, not only as to the actual sale, but as to assurances theretofore made by the purchasers to Beaman. Both were false, both were past, and both material. There can be no doubt, under the testimony in this record, that plaintiffs relied upon these statements, acted upon them, and were injured thereby. If made by defendant's agent, as claimed by plaintiffs, they were clearly actionable. See *McDonald* v. *Smith*, 139 Mich. 211 (102 N. W. 668), and cases there cited and discussed.

It is next urged by defendant that, inasmuch as the representations were made by Beaman to Wilgus alone, Painter is improperly joined as a party plaintiff. It is true that "one making a misrepresentation is responsible to such person only as it is intended for;" but, as indicated above, we think it clear that Beaman knew that Painter was interested as well as Wilgus, and was acting with Wilgus in reliance upon his statements. The letters written by Beaman to Wilgus and Painter before the contract was executed put this matter beyond dispute. If the misrepresentations were made, they were obviously made for the purpose of influencing Painter as well as Wilgus. It follows that the parties plaintiff are properly joined. 14

Am. & Eng. Enc. Law (2d Ed.), p. 149, and cases cited.

A more serious question is raised as to the measure of damages. Upon this point the court charged the jury as follows:

" If you find for the plaintiffs, I think they would be entitled to recover such sums of money as they have shown by the evidence to have jointly expended in such enterprise by way of payments upon said land, and a fair compensation for their labor and expenditures in the way of improvements upon said land, less and deducting therefrom what you may find from the evidence is the actual worth and value of the land in question as it now stands."

After this charge was given and the jury had retired for a time, they returned to the courtroom and asked the court the following question: "Is the land contract still in force?" The court requested counsel for defendant to answer the question, which request was refused. A long colloquy followed between the court and counsel for both parties, in the course of which counsel for plaintiffs disclaimed any further interest in the lands. The jury were finally told to disregard the colloquy and follow the instructions previously given. Defendant insists, and counsel for plaintiffs concede, that the true measure of damages in the case at bar is that laid down in *Page* v. *Wells*, 37 Mich. 415, where the court said:

" If the plaintiff was induced to purchase upon the representations which proved to be untrue, the measure of his loss, as it seems to us, would be perfectly plain, and would be reached by an answer to the following question: How much less is the land worth as it is than it would have been if its condition and quality had been as represented?"

See, also, *Smith* v. *Werkheiser*, 152 Mich. 177 (115 N. W. 964, 15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406); *Peters* v. *Birkett*, 153 Mich. 61 (116 N. W. 538).

But it is urged on behalf of the plaintiffs that, had the correct rule been given, the damages allowed by the jury would have been much larger; therefore the error is without prejudice. It is pointed out that the only testimony,

as to what the lands embraced in the contract would have been worth had the representations been true, was given by plaintiff Wilgus, who testified that they would have been worth $4,000. He likewise testified that they were valueless in their present condition. But, assuming the contract price to be some evidence of value, and permitting it to control, there would still remain the difference between $1,250 and $4,000, a sum about three times as large as the verdict returned under the erroneous instructions. We are disposed to the view that defendant did not suffer because of this error in the charge.

Error is assigned upon the conduct of the trial. It is asserted by counsel for defendant that the attitude of the trial court was palpably unfair and led to a miscarriage of justice. Emphasis is laid upon the fact that an amendment to the declaration was permitted without imposing terms. We think the court acted clearly within his discretion in permitting the amendment in question. It was of a trivial character, was perhaps unnecessary, and could not, in any event, have taken defendant by surprise.

Our attention is next directed to the proceedings had when the jury returned to the courtroom for further instructions. We have examined these proceedings with care and fail to find any error therein, except the reiteration by the court of the erroneous rule of damages, which, for the reason above pointed out, was not reversible.

Upon a review of the whole case, we are not able to say that the judgment indicates that the jury were swayed by any motive not entirely proper.

The judgment is affirmed.

OSTRANDER, HOOKER, MOORE, and McALVAY, JJ., concurred.

### ON REHEARING.

BROOKE, J.. It was held in our former opinion, *ante*, 260 (127 N. W. 739), that the erroneous instruction upon the measure of damages was without prejudice to defendant, for the reason that, under a correct instruction, the

jury might have found a much larger verdict in plaintiffs' favor. This conclusion is based upon the assumption that the jury would have believed plaintiffs' testimony as to values. While this testimony was uncontradicted and would apparently warrant a jury, under proper instructions, in finding for plaintiffs in an amount at least as large as the verdict rendered, we think, upon further consideration, that it cannot be said, as a matter of law, that the jury would have so found. Where the jury proceeds to verdict under an erroneous instruction, it should very clearly appear that the defeated party could not, in any view of the case, have succeeded; otherwise prejudice must be presumed to follow the error. *Warner* v. *Beebe,* 47 Mich. 435 (11 N. W. 258); *Toledo, etc., R. Co.* v. *Johnson,* 49 Mich. 148 (13 N. W. 492).

The judgment must be reversed and a new trial ordered.

OSTRANDER, C. J., and HOOKER, MOORE, and MC-ALVAY, JJ., concurred.