## MAES *v.* OLMSTED.

1. EQUITY—INJUNCTION—QUIETING TITLE—BOUNDARIES.
   Suit in equity to restrain prosecution of ejectment action and to
   settle boundaries between lots will lie where judgment for
   plaintiffs in ejectment action would still leave outstanding
   record title to strip of land in defendants, and, other lands
   being included in this suit, multiplicity of suits may be
   avoided, and also because jurisdiction of equity to quiet title
   is provided by 3 Comp. Laws 1915, § 12302.

2. BOUNDARIES—KNOWLEDGE ESSENTIAL TO ACQUIESCENCE.
   An essential element to establish boundary line by acquiescence
   is knowledge.

3. SAME—ESTABLISHMENT OF BOUNDARY BY ACQUIESCENCE NOT
   SHOWN WHERE NECESSARY PERIOD BROKEN.
   Where period of time necessary to establish boundary line by
   acquiescence was broken by ownership of one not shown to
   have known anything about lines or fences, acquiescence for
   sufficient time to establish boundary line is not shown.

4. SAME—LOCATION OF BOUNDARY BY COMMON GRANTOR BINDING ON
   GRANTEES AND ASSIGNS.
   Where adjoining owners took their conveyances from common
   grantor with reference to boundary line he had located on
   ground, the location was, irrespective of lapse of time, bind-
   ing on owners and those claiming under them.

Appeal from Newaygo; Barton (Joseph), J. Sub-
mitted April 12, 1929. (Docket No. 99, Calendar
No. 34,290.) Decided June 3, 1929.

Bill by Julius Maes and another against John
Olmsted and another to settle boundary dispute.
Charles Wacker and another intervened. From de-
cree for plaintiffs, defendants appeal. Affirmed.

*William J. Branstrom,* for plaintiffs.

*Penny & Worcester,* for defendants.

*Harry D. Reber,* for interveners.

FEAD, J.   This is a bill to quiet title to the boundary between lots E and F of block 25 of Wildwood Park, a summer resort in Newaygo county.   Defendants own lot E, plaintiffs lot F, and interveners lot G.   The lots range down from north.   Defendants appealed from decree for plaintiffs.   Decree for interveners is not here for review.

Wildwood Park was platted in 1905.   The owner was Olga Richmond, a nonresident.   The platting and selling were conducted by her agents, Branch Brothers.   The titles run:

Lot E:   Olga Richmond to Francis Richmond and wife in 1918, to defendants in 1921.   The Richmonds lived in Chicago and do not seem to have been on the lands or known anything about the lines or fences.

Lot F:   Olga Richmond to J. M. Gibbs in 1907, to Gibbs' daughter Minnie Roedel a few days later, to her brother Fred Gibbs in October, 1916, to plaintiffs in December, 1916.

J. M. Gibbs selected a site before the land was platted, arranged with Branch for its later purchase, and the plat was laid out with reference to his selection.   After the plat was made, the land was surveyed on the ground and lot stakes were set. When Gibbs purchased, Branch pointed out the stakes marking his lot.   Gibbs took possession, built fences on the north and south stake lines, erected a house, and lived there until his death late in 1907. When plaintiffs purchased, Fred Gibbs pointed out

to them the fences which he said his father had built as marking the lot lines. In 1917, plaintiffs rebuilt part of the north fence on the line of the old one. They and their predecessors in title have had such possession as would ripen into title by adverse possession in a proper case. Defendants purchased lot D, built a cottage, and have lived in it during summers or the year round since 1909, and were familiar with the local situation. The south fence of lot F, built by J. M. Gibbs, was accepted by defendants and others as marking the true boundary and was taken as the monument for the location of lines on the subsequent purchases. Defendants so understood when they bought lot D. When they purchased lot E, they understood that the north fence of lot F was on the south boundary of lot E.

About 1921, one Hayward spread the report that the lot lines were not correct. In 1923 a resurvey was made, which is conceded to have been correct, and it was discovered that the south fence of lot F was about 25 feet too far north and the same error had been carried into the other lots and fences. The survey also disclosed that the lots, instead of running 418 feet east and west, as the parties supposed, were in fact 640 feet in length. So trouble commenced. In 1925 plaintiffs undertook to extend their north fence west of the 418 feet and defendants tore down part of it. In 1926 these defendants brought ejectment against plaintiffs for the 25-foot strip, 418 feet long. After pleading in that suit, plaintiffs, in 1927, brought this action to restrain prosecution of the ejectment suit and to quiet title both to the 418 foot strip fenced and to the 240 feet west of it. They charged trespass and claimed title by adverse possession and estoppel.

This action in equity will lie, both because judg-

ment for these plaintiffs in the ejectment suit would still leave an outstanding record title to the strip in defendants, *Flint, etc., R. Co.* v. *Gordon,* 41 Mich. 420; *Eaton* v. *Trowbridge,* 38 Mich. 454, and because other lands are included in this action than are involved in the ejectment suit, and a multiplicity of suits may be avoided, *Woods* v. *Monroe,* 17 Mich. 238. The jurisdiction of equity to quiet title is also provided by 3 Comp. Laws 1915, § 12302.

Counsel discussed both adverse possession and acquiescence in the boundary lines. If, as claimed by plaintiffs, there is an exception to the general rule of tacking adverse possessions, *Hanlon* v. *Ten Hove,* 235 Mich. 227, and cases cited, where actual possession of the disputed land is delivered by the grantor upon oral agreement or understanding that his possessory rights are transferred to the grantee, 1 R. C. L. p. 719, it would carry the tacking back no further than the possession of Fred Gibbs, as no such understanding on the part of Minnie Roedel was shown. The period was insufficient to give title by adverse possession.

The testimony failed to show a *bona fide* dispute and agreement and acquiescence in the boundary line; or acquiescence, with or without dispute, for 15 years. *Hanlon* v. *Ten Hove, supra.* The period was broken by the ownership of lot E by Francis Richmond and wife, who were not shown to have known anything about the lines or the fences. An essential of acquiescence is knowledge. 1 C. J. p. 907.

There is, however, another species of acquiescence arising out of the practical location of a boundary line by a common grantor, 9 C. J. p. 244. The rule is stated in *Herse* v. *Questa,* 100 App. Div. (N. Y.) 59, as reported in 91 N. Y. Supp. 778:

"Where adjoining owners took their conveyances from a common grantor with reference to a boundary line he had located on the ground, the deeds describing the tracts as certain lots in a block, the location was, irrespective of lapse of time, binding on the owners and those claiming under them. (Syllabus.)

"It is insisted by the defendants that, in order to establish a line by practical location, there must be long acquiescence, not less than twenty years; and this could be so in order to establish a line other than the deed line, so as to make title in the party whose deed did not cover the disputed land, unless there was the element of estoppel in the case, but that rule will not apply where the location is fixed and the boundary marked upon the ground prior to the conveyance, and in reference to which boundary the conveyances have been made. The line established in that manner is presumably the line mentioned in the deed and no lapse of time is necessary to establish such location. The location does not rest upon acquiescence in an erroneous boundary but upon the fact that the true location was made and the conveyance made in reference to it."

See, also, *Myer* v. *Idlewood Ass'n,* 146 N. Y. Supp. 469.

The principle is applicable here. The practical location of the boundaries of lot F was made by the common grantor in setting out the stakes, accepted, and acquiesced in by the grantee and his assigns for over 15 years, with actual and continuous possession, defendants purchased with reference to such lines and are bound by the location.

Decree is affirmed, with costs.

NORTH, C. J., and FELLOWS, WIEST, CLARK, MCDONALD, POTTER, and SHARPE, JJ., concurred.