SABO *v.* NEW YORK CENTRAL RAILROAD COMPANY.

BARDIZIAN *v.* SAME.

1. RAILROADS — AUTOMOBILES — CROSSING ACCIDENT — NEGLIGENCE — EVIDENCE.

It was not error for trial court to deny defendant railroad company's motion for judgments notwithstanding verdicts for plaintiff minors in actions arising out of accident occurring at dusk in mid-October, where the witnesses were not in accord as to what happened with reference to the movement of defendant's locomotive or the giving of warning signals as it approached and entered the highway intersection, thereby presenting an issue of fact as to defendant's negligence.

2. SAME—NEW TRIAL—DISCRETION OF COURT—INSTRUCTIONS—EVIDENCE.

It was not an abuse of discretion for trial court to grant defendant's motion for new trial because of error in charge to jury in that it permitted jury to expand on plaintiffs' injuries beyond the scope of the evidence and neither the trial court nor the Supreme Court is able to say the jury did not consider it.

3. NEW TRIAL—DISCRETION OF COURT.

The granting or denial of a new trial rests largely in the discretion of the trial judge.

4. COSTS—FAILURE OF EITHER PARTY TO AFFIRMATIVELY PREVAIL.

No costs are allowed upon affirmance of orders denying defendant's motions for judgment notwithstanding verdict and granting defendant's motions for new trial, as neither appellants nor cross-appellant have affirmatively prevailed.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 30A Am Jur, Judgments § 300.
[2] 39 Am Jur, New Trial §§ 117, 118.
[3] 39 Am Jur, New Trial §§ 13, 131, 201, 202.
[4] 14 Am Jur, Costs § 92.

Appeal from Wayne; McCree, Jr. (Wade H.), J. Submitted April 11, 1961. (Calendar Nos. 48,670, 48,671.) Decided December 28, 1961.

Case by Darlene Sabo, by Ann Sabo, her next friend, against New York Central Railroad Company, a Michigan corporation, for personal injuries sustained in collision of automobile and switch engine. Similar action by Nancy Bardizian, by Mary Bardizian, her next friend. Cases tried and appealed together. Verdicts for plaintiffs. Motion of defendant for judgments notwithstanding verdicts denied. Motion of defendant for new trials granted. Plaintiffs appeal. Defendant cross-appeals. Affirmed.

*Hoffiz, Bedrosian & Hoffiz* (*William A. Bedrosian,* of counsel), for plaintiffs.

*George H. Wyatt* and *Edward M. Miller,* for defendant.

Carr, J. On October 16, 1954, at approximately 5:30 in the afternoon, plaintiffs were riding in an automobile proceeding in an easterly direction on Southern avenue (now John Kronk) in the city of Detroit. Said street was crossed at the time by tracks of the defendant railroad company at approximately a 45° angle, from northwest to southeast. A collision occurred between the automobile and a locomotive that was on, or crossing, the street, and both plaintiffs sustained personal injuries. The cases were tried together in circuit court and verdicts returned in favor of plaintiffs. Defendant moved for judgments notwithstanding the verdicts and, in the alternative, for new trials. The first named motion was denied but the trial judge came to the conclusion that there was error in the charge

to the jury requiring the granting of a retrial of the cases. On leave granted by this Court plaintiffs have appealed from said order, and defendant has cross-appealed from the order denying the motion for judgments notwithstanding the verdicts. As noted, the cases were tried together in circuit court and the appeals have been submitted in like manner.

The proofs on the trial of the cases disclosed that it was dusk at the time of the accident and that it was, or had been, raining. The pavement was wet. On behalf of plaintiffs testimony was introduced tending to show that the automobile approached the crossing at a speed of approximately 35 miles per hour. Plaintiff Darlene Sabo testified that she was seated in the car by an open window, that she saw the front of the locomotive suddenly emerge from behind obstacles to her view, and that she at once informed the driver of the car that a train was coming. The brakes were immediately applied, with the result that the car skidded, went into a spin on the wet pavement, struck a utility pole on the side of the street, and then came in forcible contact with the side or front of defendant's locomotive.

It was plaintiffs' claim on the trial that defendant was negligent in failing to give proper warning that its locomotive was about to cross the street. Plaintiff Sabo testified that she saw the locomotive when approximately the front 4 feet thereof was visible, that she was looking directly at the place where it emerged from behind obstacles to view, and that she heard no warning signal given of its approach. In effect, it was her claim that had the whistle or horn been sounded on the locomotive, or the bell rung, she would have heard, because of her attention to details, such signal.

It was claimed on behalf of defendant on the trial of the cases that signals were properly given as the locomotive approached the crossing, that defendant's

equipment had in fact proceeded on the street as the automobile was approaching, that the engineer saw the car and stopped the locomotive, leaving space in front of it through which an automobile might have passed in safety. It was claimed also that the automobile was being driven at an excessive rate of speed as it approached the crossing, and that the sole proximate cause of the accident was negligence on the part of the driver of said vehicle. Defendant's motion for directed verdicts and for judgments notwithstanding the verdicts was predicated on the claim that there was no evidence on which to base a finding of negligence on the part of the employees in charge of the railroad operation.

Our review of the testimony brings us to the conclusion that defendant's negligence was, under the proofs, a question of fact for the jury. The witnesses for the parties were not in accord as to precisely what happened with reference to the movement of the locomotive or the giving of warning signals as it approached and entered the highway intersection. It may be noted in this connection that certain witnesses for defendant who were in a position to hear the warning signals, if they were given, were uncertain as to the actual fact. Plaintiffs' proofs were sufficient to present an issue of fact which the jury apparently determined in their favor. The trial judge was not in error in denying defendant's motion for the entry of judgments in its favor. The situation here is not analogous to that involved in *Dalton* v. *Grand Trunk Western R. Co.*, 350 Mich 479, to which counsel have called attention.

This brings us to a consideration of plaintiffs' claim that the trial judge abused his discretion in granting the motion for a new trial. Said motion was based on claims of various errors in the charge as given, and also on the failure to give certain re-

quests to charge submitted by counsel for defendant. The trial judge in passing on the motion summarized the situation as follows:

"Defendant contends, however, that assuming the propriety of submission to the jury, the court erred in its charge. Several allegations of error are made, including the allegation that the court committed error in the following fashion: After describing Nancy Bardizian's claims as to injury as involving a fractured nose and an injury to the periorbital muscles of the right eye, the jury was instructed: 'This doesn't take from you the right to accept, reject or expand it.' This is an incorrect statement of the law. That the jury has no right to expand on injuries beyond the scope of the evidence is so well settled as not to require the citation of authority. The court's instruction permitted the jury to speculate that plaintiff might have suffered other injury in the accident for which she should be compensated.

"Although the court cannot say with any degree of certainty that this misstatement of the law influenced the verdict adversely to defendant, it cannot say, on the other hand, that it did not, and defendant has a right to have the case submitted to the jury with a correct statement of the law."

The statement in the charge characterized as incorrect doubtless resulted from an inadvertent choice of terms. How the jury actually construed it is a matter of conjecture. It is possible that it did not enter into the deliberations at all. However, we cannot say with any degree of assurance that it did not do so. The situation is somewhat analogous to that in *Warner* v. *Beebe,* 47 Mich 435, in which the trial judge submitted the case to the jury on 2 theories, one of which the Supreme Court held improper under the facts and the law applicable to the case. Commenting on the situation, it was said (p 439):

"The jury found a general verdict and we cannot know whether they acted on this part of the charge or on the other which has been shown to be unsound and misleading, or whether they may not have divided, with some sustaining one theory and the rest agreeing with the other. There must consequently be a new trial, and it is not possible to know whether the case hereafter will, or will not, stand on the same basis of fact as at the trial under review. *Osburn* v. *Lovell,* 36 Mich 246."

In *Herzberg* v. *Knight,* 289 Mich 29, the trial court gave an erroneous instruction but in other portions of the charge to the jury stated the correct rule. The erroneous instruction was held to be reversible error. This Court, speaking through Justice WIEST, posed the pertinent inquiry (p 34) "which rule did the jury follow?" A similar situation existed in *Socony Vacuum Oil Co.* v. *Marvin,* 313 Mich 528, where the holding in *Herzberg* v. *Knight, supra,* was followed.

As the trial judge pointed out in the instant case, it may not be said positively either that the jury was misled to the prejudice of the defendant, or that such result did not follow. In view of the situation presented, this Court cannot say that the trial judge abused his discretion in granting the motion for a new trial. As has been repeatedly recognized in prior decisions of this Court, the granting or denial of a new trial rests largely in the discretion of the trial judge. *Murchie* v. *Standard Oil Company,* 355 Mich 550, 562.

The orders from which the appeals have been taken are affirmed, but without costs, neither appellant nor cross-appellant having affirmatively prevailed.

DETHMERS, C. J., and KELLY and EDWARDS, JJ., concurred with CARR, J.

BLACK, J. (*concurring*).   Under date of October 6, 1961, former Justice TALBOT SMITH proposed an opinion which exposes clearly the tenuous nature of plaintiffs' cases as presented during first trial thereof.   The opinion follows:

"The principal point argued by plaintiffs, and vigorously contested by defendant, is that the train started across the highway without giving a warning signal of any kind and that this was a negligent act.   It is the argument of defendant, however, that there is no causal connection whatever between any negligent act of the defendant (should such have existed) and the accident.   'The driver's negligence,' argues the defendant, 'was the sole cause of the accident.'

"The defendant's argument proceeds from the fact that, upon being warned by her companion that a train was proceeding across the highway (the driver had neither seen nor heard it up to that time), the plaintiffs' driver 'slammed on' (these are her words) the brakes of her car and it went immediately into a skid.   It made 2 complete revolutions, hit and broke a utility pole, and bounced off the pole into defendant's engine.   It is clear that if the car had not gone into its skid it would have been in no trouble.   A vehicle following at a distance of 100 or 150 feet pulled over to the curb and came to a controlled stop without any skidding (according to the sworn testimony of its driver, who was a witness for the plaintiffs).   Actually, if plaintiffs' car had not skidded it need not even have been delayed on its trip, for the engineer (anticipating, he says, possible trouble from the speed of plaintiffs' car) put on his brakes as soon as he formed a judgment of her speed and brought his train to a complete stop, leaving open 1 lane of east-bound traffic.   This was plaintiffs' direction of travel.

"In order to make clear, beyond argument, the thrust of our opinion, we stress that this is not, as plaintiffs argue, a case of 'sudden' emergence, the

case where a thing of danger suddenly and unexpectedly emerges from a place of concealment, the unexpected apparition scaring the wits out of all reasonable drivers. This is a freight train on its tracks in a switching area. The highway upon which plaintiffs were traveling is alongside a large railroad yard and is crossed repeatedly by the various spur tracks described in the record. The train was where it had a right to be, and where there was notice it might be. Moreover, the engine traveled at a speed so modest that it was brought to a complete stop before it had completed its crossing of the 44-foot highway. (We are aware, of course, that plaintiff Sabo says it 'shot out' but such verbalizations must give way to the physical facts.)

"Upon such facts, without more, there is considerable merit to defendant's argument that there is no cause in fact attributable to it. But the facts established, and the permissible inferences therefrom, do not end here. Involved also is the matter of the warning signal, emphasized by plaintiff. The duties of trains approaching crossings have been the subject of much litigation. Among other safeguards it has been provided,[1] in substance, that at crossings within incorporated cities a warning bell should be sounded before the crossing is reached. Thus in addition to the warning given of the train by its mere presence,[2] amply present here, as above-described and as urged by defendant, the legislature has added another safeguard, that of sound. Herein lies the strength of plaintiff's case, for despite what may be argued as to the complete visibility of the train, and the warning therefrom, a jury would be justified in finding, upon the evidence, that the warning of the bell had not been given, in violation of the statute. Had such warning been given, as prescribed, the jury would, further, have been justified in finding that the automobile driver could have effected a controlled stop or a controlled diminution

---

[1] CLS 1956, § 466.13 (Stat Ann 1957 Cum Supp § 22.272).
[2] *McParlan* v. *Grand Trunk W. R. Co.* (1935), 273 Mich 527, 533.

in speed in the space available to her, rather than having gone into an uncontrolled skid as the result of 'slamming on' her brakes upon becoming aware of the train moving across her path. Clearly, a failure as to one safeguard, even though there is none as to another, is sufficient to ground liability. *Jensen* v. *Michigan Central R. Co.* (1894), 102 Mich 176, 179 (bell rung, but whistle not blown).

"We note in closing that the erroneous charge complained of was made only with respect to the case of plaintiff Nancy Bardizian. It is arguable, of course, that a jury might take it to be equally applicable to her coplaintiff, Darlene Sabo, and thus warrant a new trial as to her also. This determination would seem to be peculiarly within the discretion of the trial judge and we are not critical thereof, but it well illustrates the need for constant vigilance in protecting the rights of all parties in cases consolidated for trial.

"Subject to the above, I concur in the affirmation, without costs, of the orders from which the appeals have been taken."

This is a borderline case of alleged actionable negligence. In each like case serious doubt confronts the trial judge when the defendant moves for an instructed verdict. Yet the very fact of serious doubt is the controlling reason for denial of such motion and it is on that ground that my vote is cast to affirm submission of these cases to the jury.

In *Carver* v. *Detroit & Saline Plank Road Co.,* 61 Mich 584, 592, 593, the following rule was quoted from *Ryder* v. *Wombwell,* LR 4 Exch 32, 38, 39 (19 LT 491, 496):

"There is, in every case, * * * a preliminary question, which is one of law, viz., whether there is any evidence on which the jury could properly find the verdict [question] for the party on whom the *onus* of proof lies. If there is not, the judge ought to withdraw the question from the jury, and direct

a nonsuit if the *onus* is on the plaintiff, or direct a verdict for the plaintiff if the *onus* is on the defendant."

Following such quotation, and having noted with copious citation that such was the established rule of the English courts as well as that of our own Court, the writer of *Carver's* opinion concluded:

"In all cases of doubt, the proper method is to submit the evidence to the jury, under proper caution and instructions, to determine whether, from the facts as they shall find them established by the evidence, negligence ought to be inferred."[3]

By its motion the defendant railroad tested below, and now tests here, the legal sufficiency of plaintiffs' proofs as justifying submission to the jury of the question of actionable negligence. When a defendant in negligence so moves, he stipulates—temporarily for the purpose of his motion—that the trial judge may and should accept as outright verity that proof and only that part of the proof which may tend to make out the plaintiff's case. This is no new formula. It was announced first in Mr. Justice COOLEY's opinion of *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99, 117, 118 (another rail crossing injury case):

"For the purposes of any positive instructions which one party may demand upon the evidence, he must concede all that his opponent may claim from it. He must, therefore, concede in the present case that the train came in without sounding any other signal than the whistle which called the station; that it approached the station at a velocity which was unusual, and which would have carried it considerably beyond the usual place of stopping; that consequently it must have reached the place of injury sooner than, and, perhaps within half the

---

[3] This rule was approved, expressly and unanimously, in *Kaminski* v. *Grand Trunk W. R. Co.,* 347 Mich 417, 420.

time the plaintiff had any reason to expect, and that, in fact, others besides himself were surprised by its sudden arrival, and came near being run over and injured by it."

Concurring, then, in affirmance as to all questions considered in Mr. Justice CARR's opinion, I am moved to add that we have considered no question whether the verdicts reported for these plaintiffs run counter to the clear or overwhelming weight of the evidence. Whether any act of negligence on the part of defendant was actionably causative or factually remote is, manifestly, the real borderline to which allusion has been made. Accordingly, and for possibly needful future reference, I note what some of us may on occasion overlook, that is, when denial of motion for directed verdict in a negligence case is upheld, the invalidity of such motion only is determined.

KAVANAGH, J., concurred with BLACK, J.

SOURIS, J. (*concurring*). I vote to affirm on the grounds and for the reasons set forth in the opinion written by former Justice TALBOT SMITH and incorporated in its entirety in the forepart of Mr. Justice BLACK's opinion.

EDWARDS, J., concurred with SOURIS, J.

OTIS M. SMITH, J., took no part in the decision of this case.