## MOORE v. OTTAWA EQUIPMENT COMPANY

1. BOUNDARIES—ACQUIESCENCE—CONTROVERSY.

   The existence of a *bona fide* controversy is not necessary for the establishment of a boundary line by acquiescence.

2. BOUNDARIES—ACQUIESCENCE—STATUTORY PERIOD.

   A boundary line acquiesced in for the statutory period is fixed even if there has not been a *bona fide* controversy as to the boundary.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 12 Am Jur 2d, Boundaries § 85.
[4, 5] 12 Am Jur 2d, Boundaries §§ 4, 71, 85.

3. BOUNDARIES—ACQUIESCENCE—NATURAL CONDITIONS.

The fact that neither party's predecessor in title felt it was necessary to destroy the natural condition of the area between their cottages does not work a change in an established boundary line where the boundary line, as staked, had been accepted for over 40 years.

4. BOUNDARIES—MONUMENTS—STAKES.

The purchasers of town lots have a right to locate them according to the stakes which they find planted and recognized and, notwithstanding any errors in the location of the stakes, no subsequent survey can be allowed to unsettle their lines, if the stakes were planted by authority and if the lots were purchased and taken possession of in reliance upon the stakes.

5. BOUNDARIES—MONUMENTS—STAKES.

Monuments control course and distance; thus, the question in a boundary dispute is not how an entirely accurate survey would locate the lots, but how the original stakes located the lots.

Appeal from Iosco, Alan C. Miller, J. Submitted Division 3 February 5, 1970, at Grand Rapids. (Docket No. 6,839.) Decided August 24, 1970. Leave to appeal denied February 9, 1971. 384 Mich 803.

Complaint by Elizabeth Oakes Moore against Ottawa Equipment Company to recover possession of land and abate a nuisance. Judgment of no cause of action for defendant. Plaintiff appeals. Reversed and remanded.

*Paul Harvey* (*Arthur G. Taylor,* of counsel), for plaintiff.

*Clark, Stroup, Brown & MacKenzie,* for defendant.

Before: HOLBROOK, P. J., and DANHOF and ROOD,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

Rood, J.  This action was brought to recover possession and to abate a nuisance.  Although the outcome of this cause may have an effect on several adjacent parcels, its primary effect is on the boundary line between the adjoining parcels owned by plaintiff and defendant.  Both parcels are included in a tract called Forest Glen, which was acquired by the Tawas Beach Association from the Detroit & Mackinac Railway Company and platted into 16 lots by a registered surveyor, John W. Applin, in 1920.  Although this plat was never recorded, the same surveyor prepared an assessor's plat in 1934 which was duly filed.  The 1934 assessor's plat differed from the 1920 plat in at least one significant respect.  The point of beginning in the written description and as marked on the 1920 plat commenced at a monument on the west side of Forest Glen along the line common to Government Lot 1.  However, the written description of the tract in the assessor's plat commenced at the common corner of Sections 21, 22, 27 and 28.

There was testimony at trial from plaintiff, as well as others, that when the lots were originally sold, the property lines were indicated by white wooden stakes.

During the 40-odd years period in which plaintiff's family and the defendant's immediate predecessor in title owned the lots in question, the common boundary was accepted as laid out when plaintiff's father purchased his lot.  There was no dispute as to the location of the boundary until defendant purchased the lot, had it surveyed, and then built its fence.

The trial court made findings of fact in support of its judgment for the defendant.

A review of the record does not indicate that the findings of fact made by the Court are erroneous

within the guidelines as set down by GCR 1963,
517.1. We feel compelled, however, to reverse and
remand this case on the ground that the trial court
erred as to the law applicable to the facts as he
found them. Finding of Fact No 7 made by the
trial court is as follows: "There is no evidence of
any dispute between the Moores and Hendersons
resolved by acquiescence, or of any possession held
openly in the nature of adverse possession." It
would appear that the trial court believed that a
"dispute" was essential to the application of the
principle of acquiescence. Such we do not believe
to be the case.

This Court, in *Weisenburger* v. *Kirkwood* (1967),
7 Mich App 283, 289, said:

"The doctrine of acquiescence, as recognized in
Michigan, is found in *Jackson* v. *Deemar* (1964), 373
Mich 22. Therein, the Michigan Supreme Court
quoted from *Johnson* v. *Squires* (1956), 344 Mich
687, 692, as follows (pp 25, 26):

" 'We had occasion, in the case of *Renwick* v. *Nog-
gle* (1929), 247 Mich 150, to examine the doctrine of
acquiescence in the establishment of boundary lines
and we there held (p 152):

" ' "The rules for establishment of a boundary line
by acquiescence are summarized by Mr. Justice
Fellows in *Hanlon* v. *Ten Hove* (1926), 235 Mich
227, 231, 232 (46 ALR 788):

" ' " ' 'While acquiescence alone is not a defense, if
acquiescence follows the resolving of a doubt as to
where the line is or the settlement of a *bona fide*
controversy, which settlement agreement contem-
plates an agreed line, and the monuments of such
line are fixed and maintained thereafter, such line so
established and acquiesced in is the line, and the
acquiescence need not continue for the statutory
period; *likewise where the line is acquiesced in for
the statutory period it is also fixed.'* (Emphasis in
*Johnson* and *Renwick*.)

" ' "In that case it was held that the acquiescence of predecessors in title can be tacked on that of the parties, and if the whole period of acquiescence exceeds 15 years, the line becomes fixed, *regardless of whether there had been a bona fide controversy as to the boundary.*" ' "   (Emphasis in *Jackson.*)

We find from the evidence in this case that the boundary line between the parcels in question was accepted as laid out on the original plat and in accordance with the stakes as they were set at the date of the sale to the plaintiff's father.

The boundary line, as staked, was accepted by both predecessors in title for over 40 years, and the mere fact that neither felt that it was necessary to destroy the natural condition of the area between their respective cottages should not work a change in an established line.

On the question as to the location of the proper boundary between the lots now owned by plaintiff and defendant, it seems to the Court that the case of *Flynn* v. *Glenny* (1883), 51 Mich 580, 584, is the controlling law.   Justice COOLEY says, p 584:

"It is also pure assumption that the original survey was mathematically correct.   It is seldom or never that a town plat in a new country is made with perfect accuracy; and it is familiar knowledge in this state, if not elsewhere, that any attempt to make street lines and lot lines correspond with mathematical accuracy to the recorded plat after the lots have been occupied and improved, would disturb possessions in the most serious manner, and lead to infinite difficulty and litigation.   Fortunately the rules of law do not admit of this.   Purchasers of town lots have a right to locate them according to the stakes which they find planted and recognized, and no subsequent survey can be allowed to unsettle their lines.   The question afterwards is not whether the stakes were where they should have been in

order to make them correspond with the lot lines as they should be if the platting were done with absolute accuracy, but it is whether they were planted by authority, and the lots were purchased and taken possession of in reliance upon them. If such was the case they must govern, notwithstanding any errors in locating them."

See *Diehl* v. *Zanger* (1878), 39 Mich 601, 605, where Justice Cooley again states:

"The surveyor has mistaken entirely the point to which his attention should have been directed. The question is not how an entirely accurate survey would locate these lots, but how the original stakes located them. No rule in real estate law is more inflexible than that monuments control course and distance,—a rule that we have frequent occasion to apply in the case of public surveys, where its propriety, justice and necessity are never questioned. But its application in other cases is quite as proper, and quite as necessary to the protection of substantial rights. The city surveyor should, therefore, have directed his attention to the ascertainment of the actual location of the original landmarks set by Mr. Campau, and if those were discovered they must govern. If they are no longer discoverable, the question is where they were located; and upon that question the best possible evidence is usually to be found in the practical location of the lines, made at a time when the original monuments were presumably in existence and probably well known."

The finding of the lower court permitting the erection of a six foot wire fence is affirmed. However, the fence must be removed from its present location.

Reversed and remanded. Costs to plaintiff.

All concurred.