ROCK v DERRICK

1. BOUNDARIES—ACQUIESCENCE.

   The doctrine of acquiescence in a boundary line as a means of acquiring title to real property has three branches: first, acquiescence in a given boundary line for the prescriptive period; second, a bona fide controversy followed by agreement and acquiescence which need not continue for the statutory period; and third, that species of acquiescence which arises out of the practical location of a boundary line by a common grantor and the intention to describe in the deed the boundary so marked on the ground.

2. NEW TRIAL—VERDICTS—GENERAL VERDICT—MULTIPLE THEORIES.

   A new trial must be granted in a case where the trial court charged the jury with respect to several theories on which plaintiffs based their cause of action, as a matter of law a jury-submissible issue was not made out on one of the theories, and the jury returned a general verdict for the plaintiffs, because it cannot be determined whether the verdict rested on an infirm ground or one which had adequate support in the record.

Appeal from Baraga, Stephen D. Condon, J. Submitted Division 3 October 5, 1973, at Marquette. (Docket No. 15839.) Decided March 5, 1974. Leave to appeal denied, 391 Mich 836.

Complaint by John R. Rock, Lorraine Rock, and others against Henry Derrick and his wife for possession of land. Judgment for plaintiffs. Defendants appeal. Reversed and remanded for new trial.

*Wisti & Jaaskelainen,* for plaintiffs.

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur 2d, Boundaries § 85 *et seq.*
   Establishment of boundary line by oral agreement or acquiescence, 113 ALR 432.
[2] 53 Am Jur, Trial §§ 459, 846.
   58 Am Jur 2d, New Trial § 146.

*F. Hubert Mather,* for defendants.

Before: Holbrook, P. J., and Bashara and O'Hara,* JJ.

O'Hara, J. Plaintiffs[1] and defendants are adjoining residential property owners in the City of Baraga. So that members of the bench and bar may more easily follow the cast of characters we characterize the holdings of plaintiffs as sublot 4. Similarly, defendants hold record title to a piece of property which we designate as sublot 3. When a dispute arose as to location of the common boundary between the two plots the Rocks filed this action denominating it as a complaint for possession of land. As part of the relief sought they requested that the boundary be determined pursuant to the allegations contained in the complaint and that they be awarded the approximate eight feet which was the subject of the present dispute. Additionally, money damages in the amount of $5,000 were sought by the Rocks. A timely demand for jury trial was also made. *Initial objection was made thereto and later waived.* Defendants answered and denied that they were claiming possession of any property which belonged to plaintiffs. Per contra, defendants asserted that plaintiffs had illegally constructed a fence on the involved property belonging to the defendants, who rightfully removed the offending structure. By way of counterclaim the Derricks sought an injunction restraining plaintiffs from encroaching on the disputed premises and further praying that damages

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] The principals to this action are plaintiffs John and Lorraine Rock and defendants Henry Derrick *et ux.* The other party plaintiffs are concerned that any adjustments in the Rock-Derrick boundary would bring corresponding shifts in their own properties.

be assessed against plaintiffs. Both parties later waived any claim to money damages.

After the case was submitted to the finders of fact pursuant to an instruction which permitted them to return a verdict for plaintiffs on either the theory of adverse possession or that of acquiescence, they returned a general verdict finding that the boundary line between the Rock and Derrick properties was two feet north of the line established by plaintiffs' fence or the same being eight feet north of the east-west survey line established by the surveyor defendants had retained. The defendants then renewed their prior motion for a directed verdict by moving for judgment notwithstanding the verdict, or alternatively for a new trial. From the denial of these motions and the entry of judgment in favor of plaintiffs, defendants appeal of right.

On appeal, both parties agree that the only issues relate to whether sufficient evidence exists in the record to justify submission of the case to the jury on plaintiffs' multiple theories of having acquired title by means of either adverse possession or acquiescence.

There was testimony that in 1953 and 1954 the various sublots had been marked off by wooden stakes. John Rock testified that he bought his plot of land in reliance on those stakes as the boundary. He also testified that in 1957–1958 he built a home on sublot 4 and, at about the same time, landscaped his plot, including the strip in dispute; that he planted several trees in the strip in 1959 or 1960; and that he put the fence up in line with the trees in 1964. The fence was actually located some 1-1/2 to 2 feet short of what John Rock considered the boundary line itself.

A brother of John Rock testified that Ed Rock,

their father, had bought sublot 5 in 1953, at which time he moved a trailer onto the lot. There was also testimony that Ed Rock had options on several of the sublots, including sublot 4, but that he owned only sublot 5. The contention by the plaintiffs in their brief that Ed Rock owned sublot 4 prior to John Rock is not factually correct therefore. John Rock actually received his deed to sublot 4 from Mr. and Mrs. Carl Lytikainen in 1957.

Mrs. Dorothy King, the defendants' grantor, testified that in June 1956, just after she and her former spouse purchased sublot 3, she saw that sublot 4 had been bulldozed by Ed Rock. She did not testify as to whether or not the strip in dispute was bulldozed. Nor was there any testimony as to who, if anyone, was in possession of sublot 4 in 1956.

By removing the fence in May 1971, defendants ended the period of alleged exclusive possession by John Rock over the strip. Thus John Rock or his predecessors must have had continuous possession over the strip from May, 1956, on. The evidence showed that he landscaped the strip in 1957, but he testified that prior to 1957 he had done nothing to the land. Mrs. King's testimony was that Ed Rock had bulldozed sublot 4 by June 1956, but there was no real evidence as to the extent of the bulldozing and whether or not it included the disputed strip, nor of who was in possession of sublot 4 at that time. The interest of Ed Rock in sublot 4 was limited to an option and never ripened into legal title. Neither does the record in any manner indicate he actually claimed adversely to the record holder of title. It is therefore the opinion of this Court that adverse possession of the strip could be claimed to have begun at the earliest only when John Rock landscaped the strip

incident to construction of his home. Since the requisite 15-year[2] period of possession had not run when the fence was torn down, plaintiffs could not be said to have acquired title to the strip by adverse possession.

Now with respect to the doctrine of acquiescence, we note that this theory has three distinct branches with correspondingly different elements. In some respects the distinction is unclear and the theories overlap.

First, there is acquiescence in a given boundary line for the prescriptive period. The trial judge quite properly did not charge on this variety of acquiescence since the record would not support submission of the cause to the jury on this theory. Second, we believe that the trial court appropriately instructed the jury with respect to that species of acquiescence where a bona fide controversy existed followed by agreement and acquiescence which need not continue for the statutory period. *De Hollander v Holwerda Greenhouses*, 45 Mich App 564; 207 NW2d 187 (1973); *Moore v Ottawa Equipment Co*, 26 Mich App 89; 181 NW2d 780 (1970); *Maes v Olmsted*, 247 Mich 180; 225 NW 583 (1929); *Hanlon v Ten Hove*, 235 Mich 227; 209 NW 169 (1926). The record supports a testimonial dispute on this issue. Somewhat less of an consensus exists as to the rationale underlying the third species of the acquiescence doctrine. Compare *Maes v Olmsted, supra,* and *Daley v Gruber,* 361 Mich 358; 104 NW2d 807 (1960), with *Flynn v Glenny,* 51 Mich 580; 17 NW 65 (1883), discussed in *Moore v Ottawa Equipment Co, supra.* We do not think the mere testimony that there existed in 1953 or 1954 wooden stakes "thought" to be surveyors' stakes delimiting the lot boundaries would

---

[2] MCLA 600.5801(4); MSA 27A.5801(4).

permit a jury to reasonably find the existence of the third type of acquiescence. This is particularly true in view of the fact that there was no record testimony as to whether a survey was, in fact, made or if the common grantor had personally located the boundaries by means of stakes. The paucity of testimony would not support a jury determination that the third type of boundary acquiescence existed.

Here there was sufficient evidence to create a jury-submissible issue on the doctrine of acquiescence but we cannot speculate as to what effect the improper reference to adverse possession may have had on the deliberations of the jury. See, generally, *Warner v Beebe,* 47 Mich 435; 11 NW 258 (1882); *Painter v Lebanon Land Co,* 164 Mich 260; 127 NW 739 (1910); *Hughes v Michoff,* 288 Mich 259; 284 NW 718 (1939); *Sabo v New York C R Co,* 365 Mich 231; 112 NW2d 453 (1961).

Since this was a general verdict and it is impossible to tell whether the jury verdict rested on the infirm ground of adverse possession and/or some application of the pervasive acquiescence doctrine, we necessarily must reverse and remand for a new trial limited to that branch of the acquiescence doctrine where a property line is arrived at by settling a bona fide controversy.

Defendants may tax costs.

All concurred.